Pierrepont, J.
But for the bill of particulars in this case, the plaintiff might have shown that the defendant had money of his (the plaintiff’s) to which he had no right, and which he had obtained by false representations, fraud or deceit, and the evidence offered by the plaintiff, touching the defendant’s representations, would clearly have been admissible.
A bill of particulars does not change the nature of the action. It is not a declaration, nor is it a novel assignment. Its office is to apprise the opposite party of the claim made against him, so that he may not be surprised at the trial; and an omission or mistake not calculated to mislead, will be deemed immaterial. (4 Wend., 360.) An error in date, or in describing a parish, in an action for rent, or in describing the plaintiff’s.business or the defendant’s association, has been held to be immaterial. (2 Taunt., 224; 1 How. Pr. R., 172; 3 M. & S., 380; 8 Bing., 411; 10 Wend., 258; 3 Wend., 344.)
And Lord Ellenborough held, that where a payment made on account of the defendant to A., was stated in the bill of particulars to have been made to B. it was immaterial unless the defendant would make affidavit that he had been misled by the particulars. The cases on this subject are very numerous, and *346 they, all tend to establish the doctrine that, where .the bill of particulars has not misled the opposite party, he cannot take advantage of it to exclude the offered proof. In the case before us there is no suggestion that the defendant had been .misled, or that he was surprised by the offer at the trial. • Before the suit was commenced the plaintiff had given the defendant written notice that, “as the whole project had entirely failed,” he demanded back the money, which he had paid.. • On the day after, the defendant “ refused to receive.the stock or to pay any more money, alleging the reason to be, because he considered it worthless and of no value.’.’
The bill of particulars, stated the dates of the payments and the amounts of the money which the plaintiff sought to recover back; and undertaking to.make it more specific, stated how or on what account it happened to have been- paid. • ■
The defendant could hardly have been misled by this bill of particulars; it was a clear indication that the plaintiff claimed to recover back the money paid at the dates specified, and paid on account of stock which had never been delivered.- The-exact amount of money was claimed, with .interest from the. dates of payment, and not damages for breach of contract in not delivering the stock. If the defendant had deemed the meaning doubtful,, he could have moved for a more specific bill. But the whole, taken together, does not admit of the unequivocal interpretation that the plaintiff claimed damages on. breach of contract or for a conversion of the stock. I do not think the defendant was either misled by the particulars, or surprised by the offer at •the trial, .and I am acquainted with no. rule of law which should compel the- Court to exclude the evidence (as offered) of the defendant’s representations.
. This cause was tried since the passage of the Code which was designed.to- introduce a more liberal practice than before existed, and the act of .1849, (ch. 439, § 2,) made its provisions applicable' to existing suits. (Code, § 169.)
The plaintiff in this action would have had a right to recover back his money, paid, if the consideration had wholly failed; or if the thing.offer.ed was quite different from the. thing bargained for
In the case before us the offer-is to. show .that .the stock tendered was a widely different. thing from the stock bargained, for *347 and on account of which the plaintiff had paid his money; that it was a sham stock, a deceit, issued upon fancied profits and not upon any real basis.
1 think the evidence competent under the pleadings in the case, and that a new trial should be granted, with costs to abide the event.
Woodruff, J.
It is not claimed that, under the complaint or declaration in this action, the evidence which the plaintiff offered on the trial was incompetent, unless the plaintiff’s bill of particulars had limited the general scope of the declaration, so as to debar him from claiming to recover upon the facts sought to be proved.
The declaration was in the action of assumpsit, and contained only what, before our Code of Procedure, were called the common counts.
The bill of particulars stated a particular account of the plaintiff’s demand, as follows, viz.:
“For $1,000 received by defendant on 6th September, 1836, (on account of stock which defendant never delivered to plaintiff.)
“ $1,500 received by defendant, September 28, 1836, ( “ )
“ $1,000 “ “ November 1, 1836, ( “ ) ”
and so on.
The plaintiff's proofs showed that certain parties, among whom was the defendant, under date of August 9, 1836, agreed to take an interest in real estate “ then purchased, or about to be purchased,” on Staten Island, within that year, and to the amounts affixed to their respective names—the purchases in all not to exceed 1,500 acres, or $600,000 in amount—with a view to realize a profit on sales to be made thereof: Also, that, under the same date, articles of association were entered into, reciting that the defendant Low and Moulton Bullock, and others, had purchased and were then seised of several parcels of land on Staten Island, which they had laid out into lots and proposed to sell and they deemed it desirable to form the owners and partners interested into a joint stock company to sell out the same for the benefit of the joint stock company by retail—it being believed that a profit may be realized to said company by such sales. *348 After such recital, the articles provided that the property of the company, consisting of the aforesaid real estate, should be divided into 15,000 shares; that the said Bullock and others now holding the title should convey the land to trustees named, fot the benefit of the association and for the owners of stock (or shares) in proportion to the number of their respective shares; that directors should be appointed, and a president and other officers and agents; that shares might be transferred on the books of the company, and should be personal property; that the directors should take charge of the moneys received from sales, make payments, make all contracts, regulate prices and direct the sales of the real estate, and declare dividends.
The plaintiff then gave evidence, which was probably sufficient to show prima facie, that, on or about the 6th of September, 1836, the defendant sold to him 250 shares, at the price of $10,000, and reeéived sundry payments thereon, which payments were those mentioned in the plaintiff’s bill of particulars, and which, by this action, the plaintiff sought to recover back. There was also evidence given that, in November, 1838, the agent of the defendant called on the plaintiff and demanded the amount remaining unpaid, produced to the plaintiff a certificate for 250 shares of stock, and offered to transfer the same to the plaintiff upon receiving the amount due; that the plaintiff refused to pay the balance or receive the certificate, because the defendant had never offered him the stock before, and also because he considered the stock worthless and of no value.
The plaintiff then offered to prove that, when he made the contract with the defendant for the shares, the defendant represented to him that he would put into the association the lands which the defendant then held, at their cost.
And also to show that, at that time, the defendant held lands which had cost him $16,000; that, instead of conveying them to the association at this price, he put them in at a great excess over their cost; and that the stock which he sold to the plaintiff was received by the defendant from the association as mere profit and as the excess in the price at which he sold the lands to the association over the price paid for the said lands. And the plaintiff, as part of his proofs, offered in evidence the deeds to the defendant, by which he became the owner of the-lands for the *349 consideration of $16,000, expressed therein, in 1884 and 1835, and deeds from the defendant to Moulton Bullock, dated November 1, 1837, for the same lands, for the consideration of $85,000, and a deed from Bullock to the trustees of the association, dated November 17, 1837, for the nominal consideration of $1, conveying the same lands.
The purpose, thus declared, was, to "show, that, instead of putting his lands into the association at their cost, the defendant, more than a year after the sale to the plaintiff, and before the stock was issued which was the subject of that sale, adopted the circuitous mode of conveying to Bullock for a consideration of $85,000—Bullock conveying to the trustees.
These proofs were rejected, on the ground that such proof “ was variant from the matters contained in the plaintiff’s bill of particulars, and, therefore, inadmissible.”
By chapter 439 of the Laws of 1849, section 2, subdivision 1, sections 169 and 176, inclusive, of the Code of Procedure, were made applicable to future proceedings in existing suits; and subsequently, by the 459th section of the Code of Procedure as amended in 1851, the provisions of that act are made to apply to the trial and all future proceedings in actions then pending, when there is an issue of law or of fact, or other question of fact to be tried.
This action was commenced in 1838, and the trial upon which the question now under consideration arose, was had in 1858.
The provisions of the Code of Procedure are therefore applied to this trial, and all subsequent proceedings in the action.
By the 169th section of the Code, it is enacted that no variance between the allegation in a pleading ánd the proof shall be deemed material, unless it have actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits; and whenever it shall be alleged that a party has been so misled, that fact shall be proved to the satisfaction of the court, and in what respect he has been misled.
By section 170, it is provided that where the variance is not material, as last above provided, the court may direct the fact to be found according to the evidence, or may order an immediate amendment without costs.
*350 - On. the-other, haúd, in order that some limitation-may .be imposed-upon the 'great generality.of the. sections, section 171 provides that where the allegation - of the cause of action, to which the proof is directed, is unproved, not in ■ some particular or particulars only,- but in its entire scope and meaning, it shall not be deemed a case of variance within the last two .sections, but a failure of proof.
: In applying these provisions of the Code to the .present case, let it be supposed-: that the words of the bill: of particulars were actually inserted in the declaration itself to:-designate the moneys had and receivedhythe defendant, which the plaintiff sought hereto recover, and let it be assumed that-the'proof offered was variant from'the allegation;; .for .it .was upon that ground alone that the-'evidence was rejected-; was-the variance in the-entire scope and meaning of the- allegation of the cause of action ? or was it-a-variance in-some-particular only ?
The nature- of‘the claim, to wit, for moneys had and received by the defendant on'the days specified'which he'was not entitled .to retain, is -not sought to 'be changed. : The identical moneys are claimed in the allegation and under the proofs offered, and under each they are described as received -by the defendant on account of stock.- The only difference between the allegation-and the proofs' offered, is that in one it is stated that the stock was never delivered, by the other it is sought to show that the conduct of the-defendant in relationto the stock was such.that he could not deliver-the stock-in the state' and condition, or conferring the rights, which were contemplated- at the time of the purchase ;-or, in-another .aspect, that the-conduct'of the defendant was. such that the plaintiff-was ■ not bound to receive the stock. -
It seems to me that this-was,' at.most, a variance “in a particular only.” In either aspect" the cause of. action is identical in its scope and meaning. The words, “ which the.-defendant-never delivered' to plaintiff,”, might be stricken out,, and still -the cause of action would be well and sufficiently stated; and if so, then the-admission of the-evidence offered would certainly not leave the allegation'of the cause of action unproved in its entire scope and meaning. - • : ■
No proof was offered by the defendant cthat the variance had misled him, or that its reception would mislead him, to his pre *351 judiee; while on the other hand the plaintiff offered to prove circumstances which would seem to have apprised the defendant that the plaintiff would, on the trial, claim to recover on the precise ground whieh he sought-to establish by the evidence offered.
The cases of The Dry Dock Bank v. The American Life Ins. and Trust Co., (3 Comst., 344,) De Peyster v. Wheeler, (1 Sandf. S. C. R., 719,) Jackson v. Sanders, (1 Code R., 27,) Fort v. Gooding, (9 Barb., 371,) Getty v. Hudson River R. R. Co., (6 How., 270,) furnish illustrations of the liberal -view- taken by the courts in favor of disregarding ¡variances when the party has not been misled; in some of .which the very nature of the relief was changed by the difference between the allegation and the proofs.
And in opposition to a possible suggestion, that ■ although the court may- disregard a variance when the proofs are given, .-they are not bound to receive proofs which will create a variance, the case of Catlin v. Gunter (1 Kern., 368,) in the Court of Appeals, shows that-the- court are bound to receive the evidence when offered, if the variance to arise therefrom be not such as to leave the allegation unproved in its entire scope and meaning. ■
If these views are -correct, and- the variance would .be immaterial if the declaration itself had-contained the very words- out of which the alleged variance arises,, then I think it clear-that when the alleged variance arises from the terms of the bill of particulars-, the case is no stronger for the defendant.
The identity of the moneys, and the account-upon which.they were received- by the-defendant, remain the same under the proposed proofs as under the-bill.of particulars:- The particulars are considered, as- incorporated in the declaration -itself, as said in 14 J. R,, 329, and 15 id., 222. And yet it has been held that a-variance between the proofs and the-bill of-particulars is immaterial where it appears that the defendant has not been misled. (See 1 Taunt., 224; 1 Camp., 69, n.) If this last proposition be correct, and, T think, it is the true rule, then there-is no occasion to refer to the provisions of the-Code to-show that the proof offered-might be received ;-for the evidence was admissible, under rules existing before the .Code-was enacted.
In. one- aspect of the case -there was no. variance ■ whatever between the proofs offered and the bill of particulars. The stock had, in fact, never-been delivered.- There-had been an offer to *352 deliver it, but it was not accepted. If the words in the bill of particulars were taken as used for the purpose of identifying the stock and as having no other meaning, then there was no variance. They show that the stock on account of which the money had been paid was not in the plaintiffs’ hands, but in the hands of the defendant, and so that the contract of sale had never, in fact, been fully executed by actual delivery and acceptance. It seems to me just to say, that the words of the bill of particulars are susceptible of this construction, and that they should have been so construed, unless the defendant showed that he was in fact misled by another more probable interpretation; and if the words, “ which the defendant never delivered,” be taken as used for the purpose of excluding the idea that the stock on account of which the moneys were received by the defendant was in the plaintiff’s hands, then there was no variance.
It is only by treating these words as a specification of the grounds upon which the plaintiff sought to recover the money that any question of variance arises. I apprehend that it is not the office of a bill of particulars to state the grounds of a plaintiff’s claim, but simply to point out the items and particulars which he claims, in such a manner as will enable the party to prepare Tor trial, and if the specification be ambiguous or susceptible of a double interpretation, the defendant should apply to have it made more definite and certain, or the plaintiff would be permitted to give any evidence not clearly excluded by the terms used, subject only to the duty of the Court to see that the defendant is not misled to his prejudice. And so, also, if a plaintiff do insert the grounds of his claim in his particulars, the court will so far hold him to that specification as to see that the defendant is not misled thereby, but that is all the effect which I think should be given to such a specification.
And again, in another aspect of the case, it seems to me that the proofs offered were within a fair construction of the bill of particulars, even if the words employed therein must be treated as a specification of the grounds of the plaintiff’s claim.
The purchase was made by the plaintiff of stock to be issued; when issued, that stock would entitle the plaintiff to an aliquot part of the whole property of the association. The amount of that property would, of course, depend upon the real estate pur *353 chased - and the prices paid therefor. If the sale made by the defendant to the plaintiff was of a given number of shares in the association which, when issued, should entitle him to a fixed aliquot part or proportion of the property of the association, consisting in part of real estate for which the association should pay out in stock or money $16,000; and the shares finally issued and offered to the plaintiff entitled him only to the same aliquot part of the same real estate, and the association had been, by the defendant, required to pay $85,000 therefor, then the stock offered to the plaintiff was substantially different from the stock bargained for. This was a difference not in mere value; it was a difference in the very subject which the stock represented. Instead of offering to the plaintiff an aliquot part of the property of an association whose funds were invested in- real estate at the rate of $16,000 for a given parcel, stock was offered in an association whose funds were invested in the same real estate at a rate of $85,000 for the same parcel.
The stock offered did not represent so much actual property as the stock bargained for would have done, had the representation made at the sale (as the plaintiff alleges and offered to prove) been carried out.
Nor in this view of the subject does the proof offered amount to a mere breach of promise by the defendant. The proof would have shown that, contrary to his representation made as an inducement to the purchase, he had so dealt with the association as to alter the material quality of the- stock he sold. And that in truth the stock which the company thereafter issued, and which had no actual existence when the bargain was made, was not what it was represented and understood it should be.' In this sense, the stock on account of which the money was paid was never delivered by the defendant.
There seems to me no warrant for saying that the reception of the evidence would in effect permit the plaintiff to change his cause of action from contract into tort. The offer was not to prove that the plaintiff was induced to enter into the contract by fraud, or false pretenses, and thereupon to claim damages as in an action on the case for deceit.
Nor have I deemed it necessary to consider the offer as in any degree impeaching the good faith of the defendant in making *354 the contract of sale. The offer is consistent with the most upright, intentions in the minds- of both parties at the time the contract was entered into. The offer, therefore, in this view, did not change the allegations, nor the statements in the bill of particulars in their entire scope and meaning, within the case of Walter v. Bennett. (15 N. Y. R., 250.)
Whether the subsequent acts of the defendant in view of what the plaintiff proposed to prove was a part of the terms of sale, must, if proved, be regarded as an intentional -fraud upon the plaintiff or only as so operating upon the subject matter of the sale as to entitle the plaintiff to reclaim the money paid without necessarily involving such an intentional fraud, is not, in my judgment, material.
I feel constrained to concur in the result to which Justice Pierrepont has arrived, viz.: that the order dismissing the complaint must be reversed and a new trial be ordered, costs'to abide the event of the suit.
Slosson, J., dissented.
New trial ordered; costs to abide the event.