THOMAS S. SNEDIKER and JAMES BUCKALEW, executors of William R. Davison, vs. CATHARINE EVERINGHAM.

1. A person was employed over three years, as a domestic servant, under an agreement to have a certain sum per week, and her wages to be paid weekly. About four years after she left her employer, she commenced suit against his executors to recover her wages. *Held,* that there was no *legal* presumption that the claim had been paid: and if it is shown that it is not customary to take receipts for the payment of domestics' wages, that fact does not alter the legal presumption.

2. Mere lapse of time, less than the period prescribed by the statute of limitations, creates no presumption of payment, yet payment may be inferred from circumstances coupled with the lapse of a shorter period; but these are presumptions of fact for the consideration of the jury, and not presumptions of law, to be made the subject of instruction by the court.

3. Where a parent contracts for the services of a minor child, the wages to be paid to the child, the right of action to recover the wages is in the child, and not in the parent.

In error to the Middlesex Circuit.

Catharine Everingham brought an action against the executors of William R. Davison, deceased, to recover for domestic services performed by her for said Davison during his lifetime.

When the plaintiff was about fifteen years old, her mother made an agreement with Davison, by which it was agreed that Catharine should work for him as a domestic servant for six shillings per week, for the first year, and after that her wages were to be increased, the wages to be paid weekly. In pursuance of that agreement, the plaintiff entered into the service of Davison October 11th, 1847, and remained there until February, 1851. About four years after she left, this suit was brought to recover her wages.

The cause was tried at the Middlesex Circuit, at December Term, 1856. On the trial, the above appeared in evidence, and it was also proved that it was not customary for domestics to give receipts for their wages. After the evidence for the plaintiff was closed, the defendant's counsel moved for a non-suit, which motion was overruled. The case was given to the jury, and a verdict was rendered for the plaintiff. The defendants' counsel excepted to the ruling of the court in refusing to non-suit, and also to the charge to the jury. Bills of exception were allowed and sealed, and a writ of error brought. The points raised by the bills of exception appear in the opinions delivered in this court.

Argued at February Term, 1858, before the CHIEF JUSTICE, and Justices ELMER, HAINES, and VREDENBURGH.

*J. P. Stockton*, for plaintiffs in error.

*Schenck* and *Beasley*, for defendant.

The CHIEF JUSTICE. The first and second errors relied upon rest on the refusal of the judge to adopt, as princi-

ples of law, the following propositions, viz.: 1. If a domestic servant is employed weekly, to be paid weekly, and has quit the service a *considerable time* without claim, the presumption of law is that the claim has been paid; and the verdict must be for the defendant, unless the presumption is rebutted. 2. It being shown that the custom in domestic service is not to take receipts after leaving the service of the master for *a considerable time* without claim, the presumption of law is that the claim is paid, and the burthen of proof is on the servant to show that the claim has not been paid.

The first of these positions is founded on the ruling of Gaselee, J., in *Sellen and wife* v. *Norman,* 4 *Car. & P.* 80. The action in that case was brought for the recovery of wages claimed to be due to the wife of the plaintiff, as a domestic servant. The judge, in summing up to the jury, said : "In the regular course, if a servant has left a considerable time, the presumption is that all the wages have been paid." If the law be correctly stated in this charge, then clearly the counsel of the plaintiff is right, and the court below erred in refusing to charge as requested. In the case of Sellen *v.* Norman, the action was brought within two years after the plaintiff had quit the defendant's service. In the present case nearly four years elapsed after the close of the service before the commencement of the action. In both cases the action was brought within the period prescribed for the operation of the statute of limitations. The phrase, therefore, " a considerable time," must be presumed to mean a less period of time than sufficient to bar the claim under the statute. The ruling of Justice Gaselee was made at *nisi prius,* and is believed to be unsupported by any other authority.

In *Lucas* v. *Novosilieski,* 1 *Esp. Cases* 296, evidence that the workmen employed by the defendant came regularly every Saturday night for their wages, and that the plaintiff had been seen with the other workmen waiting to receive his wages, was held to be competent evidence for the

jury, as grounding a presumption that, as the plaintiff worked upon the same terms as the other workmen, he was paid in the same manner that they were.

In a brief report of an anonymous case in 4 *Car. & P.* 81, *note a,* it is said that in an action by a workman at a sugar refiner's for his wages, Abbott, Ch. Just., said he should direct the jury to presume that men employed in that way were regularly paid every Saturday night, unless some evidence was given to satisfy the jury that the plaintiff had, in point of fact, never been paid. And, as no such evidence was produced, the plaintiff was non-suited. It is obvious that there must have been evidence in this last case showing that the practice of sugar refiners was to pay their workmen every Saturday night. In *Evans* v. *Birch,* 3 *Camp.* 10, the evidence showed that the defendant was in the habit of accounting daily with the plaintiff, and paid over the money received for milk sold without written vouchers. The legal presumption was held to be, that the proceeds of sales were regularly paid over to the plaintiff, according to the established course of carrying on the business between the parties. All these cases rest upon the principle that where an established course of dealing or of payment is shown to exist between the employer and the employed, the presumption is that it was complied with, and the *onus* rests upon the party who alleges that it was violated. But the presumption in each case arises not from the terms of the contract, but from the mode of performance; not from the fact that the employer *agreed* to pay weekly, but that, in point of fact, his practice was *to pay* weekly. Neither of these cases affords any sanction to the decision in Sellen *v.* Norman. The result of these cases, all of which arose and were decided at *nisi prius,* is variously stated, perhaps nowhere more clearly than in *Philips and Amos* 479. " Where it has been usual between parties to make payments that frequently become due without taking written vouchers, and a long time has elapsed without any complaint being made of

non-payment, the fact of payment may very properly be presumed." See, also, 2 *Greenl. Ev.*, § 528; 1 *Parsons on Con.* 532.

Mere lapse of time, less than the period prescribed by the statute of limitations, creates no presumption of payment. But payment may be inferred from circumstances, coupled with the lapse of a shorter period. *Best on Presumptions*, § 137; 2 *Greenl. Ev.*, § 528. But these are presumptions of *fact*, for the consideration of the jury, not presumptions of law, to be made the subject of instruction by the court. This is the extent of the principle, as decided in *The United States* v. *Laub*, 12 *Peters* 1.

The additional circumstance stated in the second proposition of the defendant's counsel, viz., that the custom in domestic service is not to take receipts for the payment of wages, admitting it to have been sufficiently established in evidence, will not materially vary the case. It is at most a circumstance upon which the jury may have rested, in connection with other circumstances, as tending to raise a presumption of payment; but it certainly could not establish the fact of the payment as a *presumption of law*. There was no error, either in the refusal of the judge to non-suit, or to charge as requested by the counsel of the defendant.

As the facts appear upon the face of the bill of exceptions, they certainly present a strong case of presumptive evidence of payment, upon which a jury, in the absence of all rebutting testimony, might safely have rendered a verdict for the defendant. It was a contract for domestic service, the wages to be paid weekly. The service continued four years. No claim for wages appears to have been made until four years after the expiration of the term of service, nor until after the death of the master. These facts, if there were no rebutting or explanatory circumstances shown upon the trial, might, perhaps, have warranted the granting of a new trial, on the ground that the verdict was against the weight of evidence.

The third error assigned is, that the suit should have been brought in the name of the mother, and not of the child. The contract having been made by the mother for the services of a minor child, to which the mother was legally entitled during its minority, the right of action, it is insisted, is in the mother alone. The proof is, that the mother made the contract with the defendant for the benefit of the plaintiff; that the defendant, by the terms of the agreement, was to pay the wages to the plaintiff, not to the mother. The daughter always acted solely for herself; the mother never received any of her wages. The contract being made by the mother with a third person, authorizing him to employ and pay the child herself for her services, was virtually an act of emancipation, and entitled the child to recover in her own name for the services thus rendered. *Corey* v. *Corey*, 19 *Pick.* 29; *Shute* v. *Dorr*, 5 *Wend.* 204 ; *Burlingame* v. *Burlingame*, 7 *Cowen* 92; *Canovar* v. *Cooper*, 3 *Barb.* 115; *Voorhees* v. *Wait*, 3 *Green* 343.

The child being emancipated, the consideration for the promise of the defendant moved from the child, not from the mother. The mother was the mere agent of the child in making the contract—the legal interest, and consequently the right of action, being in the child. 1 *Bos. & Pul.* 102; *Brown on Actions* 103; 1 *Chit. Pl.* (*7th ed.*) 2, note 2 ; *Ibid.* 4.

Had the contract between the mother and the defendant been that the wages of the child should be paid to the mother, or had the contract been general, without specifying to whom the wages should be paid, or without any act or declaration on the part of the parent evincing an intent to emancipate the child, the right of action would clearly have been with the parent alone. The case is totally altered by the *terms* of the special contract.

The judgment should be affirmed.

ELMER, J. The first reason relied upon for a reversal in

this case was, that the defendant in error, who sued for wages alleged to be due her from the testator at his death, had not proved any contract to have been made with her. Her mother testified that she was in the fifteenth year of her age, and was in the service of the testator more than three years; that the witness made the contract on her behalf, that her daughter should be paid a certain price the first year, and after that, more. It did not distinctly appear whether the father was living or dead. The court was asked to non-suit, and when the case was submitted to the jury, was asked to charge that the plaintiff was not entitled to maintain her action; which being refused, bills of exception were sealed.

Assuming that the father of the girl was dead, and that her mother had an absolute right to claim the wages of her child during her minority, it is clear that she might allow her to act for herself, and to contract for and receive her wages, and dispose of them as she pleased; and it is also clear that the daughter might lawfully make her contract through the agency of her mother. Whether this was the fair result of the facts proved, was a question properly submitted to the jury. There was, therefore, no error in refusing to non-suit, or to instruct the jury that the plaintiff below was not entitled to recover.

It appeared that the services ended in 1851, and the action was commenced in 1855; and it was testified that it is not the habit for domestics to give receipts for their wages. The counsel of the defendants below requested the court to non-suit the plaintiff, on the ground that, as she had left the testator's service more than four years before the suit was commenced, and there was no proof of any claim having been made for the wages, it was to be presumed she was paid. He also requested the judge to charge—First, that if the jury believe the plaintiff was employed to be paid weekly, as a domestic, and had quitted the service for a considerable time without claim, the law presumes that the plaintiff has been paid, and the

jury should find for the defendant, unless the presumption is rebutted. Second, that as the custom in domestic service is not to take receipts, after leaving the service of the master for a considerable time without claim, the burthen of proof is on the servant to show she was not paid. The judge having refused to non-suit or charge as requested, exceptions were taken.

These exceptions are founded on the assumption that, from the facts that payment of the wages was agreed to be made weekly, that a considerable time elapsed after the service ceased without a claim being made, and that it is not the custom to give receipts when wages were paid, the presumption of law arises that the wages have been paid, and the burthen of proof is thrown on the servant to prove the negative.

It has undoubtedly been held, in several cases, that a jury may very properly presume a servant's wages have been paid, when it appeared that the custom was to pay them at stated periods, and that a considerable time had elapsed without any claim. But presumptions are properly divided into two classes, viz., presumptions of law and presumptions of fact. Presumptions of law are such as are conclusive or absolute, that is, such as are not permitted to be overcome by proof that the fact is otherwise, or such as are termed disputable presumptions, that is, such as admit of contrary proof, but which, in the absence of all opposing evidence, make a *prima facie* case, and throw the burthen of proof on the other party. When presumptions of this class arise, it is the duty of the court to instruct the jury that they are bound to find in favor of the presumption.

Presumptions of fact are of an entirely different character, and are in truth but mere arguments, and differ from presumptions of law in this essential respect, that while those are reduced to fixed rules, and constitute a branch of the particular system of jurisprudence to which they belong, these merely natural presumptions are derived

Snediker v. Everingham.

wholly and directly from the circumstances of the particular case, by means of the common experience of mankind, without the aid or control of any rules of law whatever. These cases fall within the exclusive province of the jury. They are usually aided by the advice and instructions of the judge, more or less strongly urged at his discretion; but the whole matter is to be decided by themselves, according to the conviction of their own understanding. 1 *Greenl.*, § 44–48.

It cannot be doubted, I think, that whatever presumption of payment arose in the present case was a presumption of fact for the jury, like the presumption of payment of a bond or judgment after nineteen years, which after twenty years is a presumption of law. The result of the authorities is stated more strongly for the plaintiffs in error in *Chitty on Con.* 459, (*4th Am. ed.,*) than by the other text writers; but he only says, " where a domestic servant has left his master for a considerable period, it will in general be presumed that his wages have been paid," &c., which means no more than that this presumption may be fairly made by the jury. If the judge had been requested to charge that the jury had a right, from the circumstances, to presume payment, it would, perhaps, have been his duty to do so, and the refusal to give such instructions would have been erroneous; but he was not bound to non-suit the plaintiff, or to charge in positive terms that the law presumed a payment, so that the burthen of proof was on the servant to prove the contrary. What he did in fact charge is not stated, and it must therefore be presumed that his instructions, so far as they went, were correct.

In my opinion, the judgment must be affirmed.

HAINES, J. This action was brought by Catherine Everingham to recover wages for work and labor done in the domestic service of the testator. The questions raised by the exceptions may be comprised in two.

*First.* Whether any cause of action in the plaintiff below was proved; and if so, secondly, whether the circumstances attending the case did not raise the presumption of a discharge of any such cause of action.

That parents are bound to maintain their children, and are entitled to their services during minority, is a proposition too plain to be denied. The law considers the child as the servant of the parent, and as laboring for him, although in the actual employment of another. The wages earned belong to, and may be recovered by and in the name of the parent.

Yet the parent may relinquish his right, and authorize the child to labor for himself, and receive his earnings, and appropriate them to his own use. An agreement authorizing a third person to employ and pay the child will bind the parent; and a payment to the child in such case will bar the action of the parent.

Such an agreement may be by express terms, or it may be implied from circumstances showing such intention. If there be no agreement, express or implied, that the payment may be made to the child, then the parent alone is entitled to the wages, and to an action to recover them.

In this case the mother, who was a widow, testified that she had made the bargain with the testator for the benefit of her daughter, who had always acted solely for herself, and whose wages she, the mother, had never received nor claimed. It was proper, therefore, to charge the jury, that under such evidence, if they believed it, the daughter could maintain the action. That agreement was a good defence against any claim of the mother, and if the daughter cannot maintain the action, no one else can.

*Second.* It is urged that the circumstances of the case raise the presumption of payment, so as to cast upon the plaintiff the burthen of showing that the wages were not paid. These circumstances are, that the service was for weekly wages; that for such services payments are usually

Snediker v. Everingham.

made without receipts being taken ; and that the action was not commenced till after the death of the employer and several years after the end of the service, without evidence of any demand or claim made.

The judge charged the jury that the burthen of proof was not thereby changed, and that payment of the wages was not to be presumed.

Presumption is the inference of the truth or falsehood of a proposition, drawn by a process of probable reasoning, in the absence of its actual certainty. It is the probability of the proposition being true or false, deduced from its conformity or repugnancy to our general knowledge, observation, and experience. *Best on Presumptions* 3.

It is the inference of the existence of one fact, from the existence of some other fact, founded on previous experience of their connection. 3 *Starkie's Ev.* 927.

Thus payment is presumed from the possession of the security by the debtor after the day of payment, because in the ordinary course of dealing the security is given to the party who pays it. From the payment of a quarter's rent the law implies the discharge of the rent of a previous quarter, since it is usual to pay in the order of time in which the rents fall due ; so payment may be presumed from lapse of time. Experience proves that the creditor seeks the payment of the debt on its maturity, or within a reasonable time after. A long lapse of time, in the absence of other proof, will therefore afford a good defence. Our statute has given the limit of six years for the prosecution of simple contracts ; the mere lapse of a shorter period is no bar to an action.

But lapse of time, together with circumstances relating to the usual course of trade in general, or to the habit and usual course of dealing between the parties, may be evidence on which to found a presumption that the debt is paid. Hence, in *Lucas* v. *Novosilieski*, 1 *Esp.* 296, referred to in 2 *Greenl. Ev.* 528, where the defendant was regular in his dealings, and employed a large number of work-

men, whom he was in the habit of paying every Saturday night, and the plaintiff had been one of the workmen, and had been seen among them waiting to receive his wages, but had ceased to work for the defendant for upwards of two years, it was held not as a bar, but as admissible evidence on which to found a presumption that he had been paid with the others. So where a customer is in the habit of making daily payments for his daily supplies, it is held to be a sufficient ground for the presumption of payment until the contrary be shown. *Evans* v. *Birch*, 3 *Camp.* 10.

In the case before us, there was no proof of the course of dealings between the parties—no evidence of weekly payments, nor of any settlement.

The agreement for weekly wages, the absence of proof of any claim made prior to the commencement of the suit, and the delay to commence it till after the death of the testator, and several years after the end of the service, raised no presumption of payment so as to change the burthen of proof.

They were circumstances competent and proper to be submitted to the jury, and to be considered by them in settling the fact whether the wages had been paid or not, and for that purpose they were submitted.

I can see no error in the ruling of the court, and am of the opinion that the judgment should be affirmed.